IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
JOHN P. HEHMAN
CLERK

2013 OCT -3  PM 2:06

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | |
|---|---|
| **THE OHIO STATE UNIVERSITY**<br>103 Bricker Hall<br>190 North Oval Mall<br>Columbus, Ohio 43210<br><br>**Plaintiff,**<br><br>v.<br><br>**ADAM S. WOODBURY**<br>1143 E. Walnut St.<br>Westerville, OH 43081<br>and<br>**CHOKE ON THESE NUTS LLC**<br>P.O. Box 921<br>Lithopolis, Ohio 43136<br><br>**Defendants.** | Case No. 2:13CV0989<br><br>Judge JUDGE WATSON<br><br>MAGISTRATE JUDGE DEAVERS |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, PASSING OFF AND UNFAIR COMPETITION AND CANCELLATION OF REGISTERED TRADEMARK

Plaintiff The Ohio State University ("Ohio State"), for its complaint against Defendants Adam S. Woodbury and Choke On These Nuts, LLC ("Defendants") states as follows:

### Nature of the Case

1. This is an action for trademark infringement, passing off and unfair competition, under the Lanham Act, 15 U.S.C. § 1114, § 1125(a), relating to Defendants' unlawful appropriation, use, misuse and federal registration of the Ohio State Trademarks (as defined below).

2. Plaintiff Ohio State is a public institution of higher learning located in Columbus, Ohio that is engaged in providing college level educational courses and college sport exhibition events and recreation programs, dramatic and musical entertainment events.

3. Upon information and belief, Defendant Adam S. Woodbury is an individual with a business address of 1143 E. Walnut St., Westerville, Ohio 43081 who is also acting through his

LLC Choke On These Nuts, LLC of the State of Ohio with a principal business address of P.O. Box 921, Lithopolis, Ohio 43136.

4. Upon information and belief, Defendant Woodbury is the sole incorporator of and controls all operation of Defendant Choke On These Nuts, LLC.

5. This court has jurisdiction over this matter under 15 U.S.C. § 1125 and 28 U.S.C.§ 1338.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b), as Ohio State's cause of action arose and Ohio State is being injured in this judicial district, and because Defendants are residents in this forum.

7. In September 2012, Ohio State learned that Defendants had filed, and the U.S. Patent & Trademark Office ("USPTO") had published, federal trademark application Serial No.



85/367351 of the trademark Choke On These Nuts and design

(the "Block O design") (which registered on February 12, 2012 as Registration No. 4,102,270) for "hats; hooded sweatshirts; shirts".

8. On September 25, 2012 Ohio State's counsel sent a Cease & Desist letter to Defendants demanding that they not use Ohio State's scarlet Block "O" design in any way in connection with its business (attached as Ex. A).

{ATS0003-1} 2

9. On October 3, 2012 Defendants' counsel wrote back to Ohio State and agreed to cease the sale of products containing Ohio State's Block O and to refrain from using the Block O in the future but denying that its actions were infringing (attached as Ex. B).

10. On October 4, 2012 Ohio State's counsel wrote back to Defendants' counsel, acknowledging that Defendants had represented they would cease sale of the infringing clothing and demanding that Defendants voluntarily cancel Registration No. 4,102,270 (attached as Exhibit C).

11. Defendants continue to sell their infringing clothing items bearing Ohio State's Block "O" design in the color scarlet on their own website (www.chokeonthesenuts.com), which re-directs customers to their page on Amazon.com (copy attached as Exhibit D).

12. There have been no further communications between the parties since October 2012 and Defendants have never been authorized to sell or distribute any products that utilize the Block "O" trademark of Ohio State.

13. Defendants have refused to acknowledge Ohio State's rights in the Ohio State Trademarks and have continued their use of such trademarks on Defendants' products.

### The Ohio State Trademarks

14. Established in 1870, The Ohio State University has developed into one of the most well-respected institutions of higher learning in the country.

15. For more than 140 years Ohio State has been actively engaged in providing college level educational courses and college sport exhibition events and recreation programs, dramatic and musical entertainment events. Ohio State also licenses and markets various

products and services, including publications, clothing, and other merchandise using Ohio State's trademarks.

16. In connection with the activities and products described in the preceding paragraphs, Ohio State is the owner of, among others, the following federally registered trademarks:

   a. "BUCKEYES" — registration number 1,152,683, registered April 28, 1981, to provide college sport exhibition events and recreation programs;

   b. "BUCKEYES" — registration number 1,267,035, registered on February 14, 1984 for use on: toy stuffed animals, Christmas decorations, bean bags, plastic toys, foam toys and equipment sold as a unit for playing a stick ball game; clothing-namely, T-shirts, ties, scarves, bibs, sweatshirts, athletic shorts, hats, aprons, jogging suits and sweaters; blankets, textile placemats, handkerchiefs, quilts and pennants; tumblers, cups, mugs, glasses and insulated beverage container holders; hassocks, bean bag leisure furniture, letter holding boxes, mirrors, and folding seats for use by individuals in athletic stadiums and plaques; tote bags; pens, posters, decals, and paintings; jewelry-namely, rings, pins, belt buckles and key chains, all being made of precious metal; electric lamps; providing college level educational programs, sport exhibition events and recreation programs;

   c. BUCKEYE DESIGN — registration number 2,437,954, registered January 2, 2001 for use on decals and stickers;

   d. "OHIO STATE" — registration number 1,294,114, registered September 11, 1984 for providing college level educational programs, sport exhibition events, recreation programs, toy stuffed animals, Christmas decorations, bean bags, plastic figurine toys, foam figurine toys, bats, balls and other equipment sold as a unit for playing a stick ball game, shoe laces, t-shirts, ties, scarves, bibs, sweatshirts, shorts, hats, aprons, jogging suits, sweaters, blankets, pennants, textile placemats, handkerchiefs, quilts, tumblers, cups, mugs, glasses, beverage container insulators, hassocks, bean bag leisure furniture, mirrors, and folding seats for use by individuals in athletic stadiums, tote bags, pens, posters, decals, paintings, letter holding boxes, rings, pins, belt buckles, key chains and electric lamps;

   e. "OHIO STATE" — registration number 1,152,682, registered April 28, 1981 for college sport exhibition events and recreation programs, dramatical and musical entertainment events and college level educational courses;

   f. "OSU" — registration number 1,121,595, registered July 3, 1979 for college sport exhibition events and recreation programs, dramatical and musical entertainment events and college level educational courses;

g. "OHIO STATE UNIVERSITY" — registration number 1,294,115, registered September 11, 1984 for jewelry-namely, rings, pins, belt buckles and key chains; pens, posters, decals, paintings, letter holding boxes; hassocks, bean bag leisure furniture, plaques, mirrors and folding seats for use by individuals in athletic stadiums; tumblers, cups, mugs, glasses and beverage container insulators; : blankets, pennants, textile placemats, handkerchiefs and quilts; clothing-namely, t-shirts, ties, scarves, bibs, sweatshirts, shorts, hats, aprons, jogging suits and sweaters; toy stuffed animals, Christmas decorations, bean bags, plastic figurine toys, foam figurine toys, and equipment-namely, bats and balls sold as a unit for playing a stick ball game; and : providing college level educational programs, sport exhibition events and recreation programs.

h. "O" – registration number 2,689,612, registered February 25, 2003 for clothing, namely, jackets, sweaters, hats and T-shirts.

i. "O" – registration number 2,064,906 registered May 27, 1997 for clothing, namely, hats, caps, tee shirts, sweat shirts, sweat pants, shorts and sweaters.

j. "O" – registration number 2,657,665 registered December 10, 2002 for Cloth flags, pennants and banners.

k.  - registration number 2,094,602 registered September 9, 1997 for clothing items for men, women and children, namely, sweatshirts, T-shirts and sweaters.

17. Copies of the certificates of registration for each of these trademarks are attached to this complaint as Exhibit E.

18. The certificates of registration identified in the preceding paragraph are valid and subsisting, and Ohio State is the owner of record title in the trademark registrations described above.

19. The certificates of registration are prima facie evidence of the validity of the registered trademarks, Ohio State's ownership of the registered trademarks, and Ohio State's exclusive

right to use the registered trademarks in connection with the goods and services specified in the certificates of registration enumerated above. All of the registered marks are incontestable, which provides conclusive evidence of their validity under 15 U.S.C. § 1115(b), and constructive notice of the registrant's claim of ownership under 15 U.S.C. § 1072.

20. The Block "O" is the major trademark of Ohio State, as noted on the University's website, "The Block O is by far the most recognizable visual identifier of Ohio State with every one of our key audiences." http://www.osu.edu/brand/art/buckeye-symbols.html.

21. In addition, according to the Ohio State website http://www.ohiostatebuckeyes.com/ot/block-o.html, "In 1938, Buckeye head cheerleader Clancy A. Isaac Jr. conceived the organization known as Block "O". The purpose of this new cheering section would be using plastic cards to form pictures and words in support of the Ohio State Football Team." Today the Block O organization is a large student organization at Ohio State. http://www.blocko.org/. The Block O organization is responsible for the iconic Block O that appears at all Ohio State home football games.



{ATS0003-1}  6

22. A search on Google of Ohio State Block O turns up numerous images of the Block O associated with Ohio State sold on a wide variety of products, many of which are clothing:



23. Ohio State has also historically used the color scarlet in connection with the Block "O" trademark. In 1878, Ohio State adopted as its school colors "scarlet and gray." Further, in connection with the promotion of its various academic, athletic, entertainment and philanthropic activities, Ohio State has historically used the school colors scarlet and gray and the term "Scarlet & Gray" to refer to, describe and indicate origin in various individuals, teams, school songs and organizations affiliated with Ohio State, as well as Ohio State's two campus golf courses, "Scarlet" and "Gray".

24. Ohio State's scarlet Block O is known to tens of millions of people each year who watch college football and see the scarlet Block O trademark in the center of the Ohio Stadium football field:



25. Defendants' clothing uses the Ohio State's scarlet Block O as the only letter with the color scarlet on its clothing which bears the words "Choke On These Nuts" with two obvious Buckeye nuts, one to either side of the words "on these":



26. Defendants' shirts have a scarlet Block O, black background and the remaining words are in white. While scarlet and gray are the official school colors of Ohio State, in the past 15 years, Ohio State has also used the colors black and white as secondary colors in its official athletic uniforms and in licensed uniforms and other products.

27.  Ohio State has used the registered trademarks, including the Block O trademark, described above (collectively the "Ohio State Trademarks") continuously and exclusively for identification with Ohio State and its academic, athletic and entertainment activities and licensed products and services long prior to Defendants' alleged claimed date of use of November 22, 2006. The Ohio State Trademarks and their respective reputation and

goodwill have continuously grown and are now well known throughout the City of Columbus, the State of Ohio and the United States.

28. The Ohio State Trademarks have become and are now solely associated with Ohio State in the minds of consumers.

29. In addition to using the Block O as the primary logo of Ohio State, Ohio State licenses and markets dozens of items using the Block O trademark.

30. Ohio State's academic and athletic programs rank among the best in the nation. Ohio State's undergraduate program and graduate programs for law, medicine, business, engineering and education are all currently ranked among the top 40 schools in the nation in their respective areas by U.S. News & World Report.

31. Ohio State alumni have an affinity for Ohio State that runs deep and these Buckeyes can be found in every corner of the country. There are approximately 464,000 Ohio State alumni located in virtually every country throughout the world. When consumers throughout the nation (or world) see the Block O depicted in scarlet, they immediately associate it with Ohio State.

32. In 2002, the Ohio State football team, the Buckeyes, won the NCAA football championship. This was the seventh national football championship for the Buckeyes. Only five other programs, in the history of collegiate football, have amassed more than seven national championships.

33. In the 2006 — 2007 athletic year, Ohio State Buckeye teams appeared in both the NCAA Football National Championship and the NCAA Final Four and championship basketball games. This success again cemented the presence of the Ohio State marks on a national stage, making goods bearing the Ohio State marks even more sought after and desired. Not

surprisingly, 2006 — 2007 was a record year for licensing revenue for Ohio State, which was in excess of nine (9) million dollars.

34. In 2008, the Buckeyes again played for the national championship of college football in the BCS National Championship Game. In 2009, the Buckeyes played in the BCS-Fiesta Bowl, and in January 2010, the Buckeyes defeated Oregon in the BCS Rose Bowl. In 2012, the Buckeyes went undefeated and untied and finished ranked No. 3 in the country under coach Urban Meyer.

35. As a result of Ohio State's fame and its extensive use, advertising, and sale of goods and performance of athletic services bearing the Ohio State Trademarks, the Ohio State Trademarks have acquired strong secondary meaning, have achieved favorable national recognition, and have become assets of significant value as symbols pointing only to Ohio State, its services, products and goodwill.

36. Ohio State approves and maintains quality control over all of the products and services it licenses and produces, the goods and services bearing its marks, and its trade dress to protect the tradition, prestige and goodwill associated with these marks, and Ohio State makes systematic efforts to safeguard the quality and integrity of the Ohio State marks, and the public assumes that Ohio State has approved, sponsored or endorsed all products and services bearing its trademarks.

37. For more than thirty-five (35) years, Ohio State has both used and licensed third parties to use the Ohio State Trademarks on various items and services, including clothing of all types (including shirts, hooded sweatshirts and hats), window decals, food products, restaurant services, internet websites, screen savers, athletic uniforms, calendars, novelties, books,

**Defendants' Willful Infringing Use of the Ohio State Trademarks**

42. Defendants have never been licensed or authorized to use the Ohio State Trademarks. Defendants are making infringing use of the Ohio State Trademarks on clothing products, namely hooded shirts, shirts and hats, as follows:



43. Ohio State requested that Defendants both cease use of the scarlet Block O trademark on their shirts and cancel their federal registration containing the scarlet Block O trademark, but Defendants refused to do so. In fact, Defendants denied that Ohio State has any claim of rights in the scarlet Block O trademark, forcing Ohio State to bring this action.

44. Upon information and belief, Defendants are and will continue to use the scarlet Block O Ohio State Trademark without permission of Ohio State unless this Court issues an injunction prohibiting such use.

{ATS0003-1}                                    12

45. Defendants' unauthorized use of the Block O Ohio State Trademark is commercial in nature and is intended to, and will, directly compete with the lawful commercial activities of Ohio State and its licensees to the detriment of Ohio State.

46. Defendants have obtained a federal trademark registration that contains the Ohio State scarlet Block O, Registration Nos. 4,102,270 for clothing products that are competitive with clothing products sold by Ohio State using its scarlet Block O trademark. Defendants have claimed that they began interstate use of the Choke On These Nuts design on their clothing products as early as March 4, 2011.

47. Defendants' adoption and use of the scarlet Block O on clothing that suggests a connection with Ohio State was decades after the scarlet Block O trademark had been used and become associated with Ohio State on identical goods in the minds of the public, and therefore both registration is subject to cancellation under 15 U.S.C. § 1052(a) and (d).

## COUNT ONE
## INFRINGEMENT OF REGISTERED TRADEMARKS UNDER
## 15 U.S.C. § 1114

48. Ohio State incorporates the allegations contained in paragraphs 1 through 47 as if fully restated herein.

49. Defendants' use of the scarlet Block O on clothing products is a willful infringement of the registered Ohio State Trademarks, and such commercial use was with knowledge of and intended to trade off of Ohio State's prior rights to the Ohio State Trademarks.

50. Defendants' use of the Ohio State Trademarks creates a likelihood of confusion as to the affiliation, connection, association or sponsorship, affiliation or endorsement of Defendants' clothing by Ohio State in an appreciable number of consumers.

51.     Upon information and belief, Defendants are and will continue to use the Ohio State Trademarks without permission of Ohio State unless this Court issues an injunction prohibiting such use.

52.     Defendants' unauthorized use of the Ohio State Trademarks is commercial in nature and is intended to, and will, directly compete with the lawful commercial activities of Ohio State and its licensees to the detriment of Ohio State.

53.     Ohio State is entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT TWO
## TRADEMARK INFRINGEMENT, PASSING OFF AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

54.     Ohio State incorporates the allegations contained in paragraphs 1 through 53 as if fully restated herein.

55.     Defendants' advertising, promotion, manufacture, distribution and sale of products that use the scarlet Block O Ohio State Trademarks will likely cause confusion, mistake or deception on the part of persons encountering such products, as to the origin, sponsorship or approval by Ohio State of the Defendants' products all in violation of 15 U.S.C. § 1125(a).

56.     Upon information and belief, Defendants' trademark infringement, passing off and unfair competition has been knowing, willful and deliberate, and Defendants' actions have been designed specifically to trade upon the consumer goodwill enjoyed by Ohio State on a shirt that uses a scarlet Block O and suggests a connection with Ohio State athletics.

...

57.     Ohio State's consumer goodwill is of enormous value, and Ohio State is suffering and will continue to suffer irreparable harm if Defendants' trademark infringement and unfair competition is allowed to continue.

58.     Defendants' trademark infringement, passing off and unfair competition will likely continue unless enjoined by this Court.

59.     Ohio State is entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including but not limited to an accounting, compensatory damages, treble damages, disgorgement of profits, costs and attorneys' fees and an order to the Commissioner of Patents and Trademarks directing them to cancel U.S. Trademark Registration No. 4,102,270 (pursuant to 15 U.S.C. §1119).

60.     Upon information and belief, Defendants' conduct has been and continues to be deliberate, willful and wanton, occurring long after the Defendants' prior knowledge of Ohio State's exclusive rights in and to Ohio State's Trademarks, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

61.     The conduct of Defendants has damaged Ohio State in an amount that is not now ascertainable but may be proven at trial.

62.     Upon information and belief, Defendants' unlawful conduct will continue to Ohio State's detriment unless immediately enjoined.

**WHEREFORE**, Ohio State requests that the Court order:

1. The issuance of a permanent injunction enjoining Defendants and their agents, servants, employees, successors, representatives and assigns, and all others in concert and privity with them from infringing, or falsely designating the origin of the Ohio State Trademarks, from commercially using the Ohio State Trademarks in commerce in any way, and from injuring Ohio State's reputation;

{ATS0003-1}                            15

2. That Defendants and their agents, servants, employees, successors and assigns, and all others in active concert and participation with them be permanently restrained from using, registering, selling, transferring or assigning any name that contains the Ohio State Trademarks;

3. The issuance of a permanent injunction enjoining Defendants from using any of Ohio State's Ohio State Trademarks or names or marks or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Ohio State with Defendants;

4. That Defendants provide the Court and Ohio State with a complete list of all third persons, including, without limitation, retailers, distributors, agents, employees or representatives of Defendants, to whom Defendants have sold products using any of the Ohio State Trademarks, with a detailed accounting of the products sold, the name of the party to whom they were sold, the location of such person, and the cost of the products sold to each location;

5. That Defendants have their chief financial officer and outside accounting firm prepare the documents identified in #4 (above) and submit them to Ohio State and this Court with a sworn declaration as to their accuracy and authenticity;

6. That Defendants disgorge to Ohio State their profits on the sales identified in #4 (above), together with interest and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of Ohio State's known rights;

7. That Defendants pay compensatory and treble damages to Ohio State;

8. That Defendants disgorge all profits realized from any other sales of products that include any of the Ohio State Trademarks;

9. That Defendants pay Ohio State's attorneys' fees, together with the costs of this suit;

10. That the Commissioner of Patents & Trademarks of the USPTO cancels U.S. Trademark Registration Nos. 4,102,270 pursuant to 15 U.S.C. §1119; and

11. All other and further relief as may be just and equitable.

Respectfully submitted,

Michael DeWine
Ohio Attorney General

By: *[signature]*
Joseph R. Dreitler, Trial Attorney (0012441)
Mary R. True (0046880)
DREITLER TRUE, LLC
137 East State Street
Columbus, OH 43215
(614) 545-6354
jdreitler@ustrademarklawyer.com
mtrue@ustrademarklawyer.com

Attorneys for Plaintiff The Ohio State University

{ATS0003-1}                17